# ADVERSARY PROCEEDING DOCKET NO. 65.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
06/30/2017

| | | |
|---|---|---|
| In re: | § § | |
| MARIA SOUTHALL-SHAW, | § § | Case No. 15-33085 |
| Debtor. | § § | Chapter 13 |
| | § § | |
| MARIA SOUTHALL-SHAW AND ELVIS LEE SHAW, | § § § | |
| Plaintiffs | § § | Adversary No. 15-03322 |
| v. | § § | |
| HSBC MORTGAGE SERVICES, INC., HOUSEHOLD FINANCE CORPORATION III, AND CALIBER HOME LOANS, INC., | § § § § § | |
| Defendants. | § | |

**ORDER GRANTING IN PART AND DENYING IN PART THE PLAINTIFFS' MOTION TO VACATE JUDGMENT OF MAY 25, 2017**
[Adv. Doc. No. 59]

### I. INTRODUCTION

On May 25, 2017, this Court issued an Order Granting HSBC Mortgage Services, Inc. ("HSBC") and Household Finance Corporation III's ("Household") (collectively, the "Defendants") Motion for Judgment on the Pleadings (the "May 25 Order"). [Adv. Doc. No. 55]. On June 8, 2017, Maria Southall-Shaw and Elvis Lee Shaw (the "Plaintiffs") filed their: (1) Motion to Vacate Judgment of May 25, 2017 (the "Motion"), [Adv. Doc. No. 59]; and (2) Response to Defendants HSBC and Household Finance Corporation's Motion for Judgment on the Pleadings (the "Plaintiffs' Response"), [Adv. Doc. No. 60]. On June 21, 2017, the

1

Defendants filed their response to the Motion and the Plaintiffs' Response (the "<u>Defendants' Response</u>"). [Adv. Doc. No. 63].

For the reasons set forth herein, the Court denies in part and grants in part the Motion. Accordingly, the Court will vacate the May 25 Order in part to allow the Plaintiffs leave to amend their complaint to plead actual allegations that form the basis of a claim under 12 C.F.R. § 1026.36(c)(1)(iii).

## II.  ANALYSIS OF THE PARTIES' ARGUMENTS

The Plaintiffs filed the Motion pursuant to Federal Rule of Civil Procedure 59(e)[1] and request that the Court vacate the May 25 Order to prevent "manifest injustice." [Adv. Doc. No. 59, p. 2 ¶ 5]. They specifically request that the Court vacate the May 25 Order so that they can amend their complaint for a second time.[2] [*Id.* at p. 4 ¶ 11]. The Court first addresses the standards for the Motion and then addresses the merits of the Plaintiffs' Response.

### A. Standards to Evaluate a Motion to Vacate Requesting Leave to Amend

Rule 59(e) governs a motion to vacate a judgment or order. *James v. Wells Fargo Bank, N.A.*, No. H-14-0449, 2014 WL 3002415, at *2 (S.D. Tex. July 2, 2014). In *Templet v. HydroChem Inc.*, the Fifth Circuit stated that "[a] Rule 59(e) motion calls into question the correctness of a judgment . . . [and] that such a motion is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." 367 F.3d 473, 478–79 (5th Cir. 2004) (quotation marks and citations omitted). The *Templet* court further stated that "Rule 59(e) serves the narrow purpose of allowing a party to

---

[1] Hereinafter, any reference to a "Rule" refers to the Federal Rules of Civil Procedure.

[2] When this Court entered the May 25 Order, the "live" complaint was the Plaintiffs' First Amended Complaint. [Adv. Doc. No. 38]. The Motion and the Plaintiffs' Response, read together, request this Court to vacate the May 25 Order in its entirety and allow the Plaintiffs to file a second amended complaint.

correct manifest errors of law or fact or to present newly discovered evidence." *Id.* at 479 (quotation marks omitted). This is an extraordinary remedy that is sparingly granted. *Id.*

Moreover, when a party files a Rule 59(e) motion requesting a court to vacate its judgment and allow the party leave to amend its complaint under Rule 15(a), "the trial court's discretion may be more constrained." *James*, 2014 WL 3002415, at *2. Thus, this Court should consider a motion to vacate under Rule 59(e) pursuant to the considerations controlling the court's exercise of discretion under Rule 15(a). *Id.* (citation omitted).

Rule 15(a)(2) allows leave to freely amend "when justice so requires." However, the court must balance this power with the duty to manage a case. *James*, 2014 WL 3002415, at *2 (citation omitted). Thus, "[a] court may deny leave to amend in the event of . . . futility of amendment." *Id.* (internal citations omitted). Stated differently, when a motion to vacate requesting leave to file an amended complaint includes new legal theories and arguments that are futile, the Court is not required to grant a Rule 59(e) motion. *Cal Dive Intern., Inc. v. Schmidt*, 639 Fed. App'x 214, 218 (5th Cir. 2016). Indeed, "a district court need not grant a futile motion to amend." *Legate v. Livingston*, 822 F.3d 207, 211 (5th Cir. 2016).

To determine if a Rule 59(e) motion requesting leave to amend is futile, a court must evaluate the motion under Rule 12(b)(6) standards, "meaning an amendment is considered futile if it would fail to state a claim upon which relief could be granted." *Id.*; *see also Edionwe v. Bailey*, No. 7:15-CV-00409, 2016 WL 4646633, at *2–3 (S.D. Tex. Sept. 7, 2016) (holding a court did not commit manifest legal error by denying a motion for leave to amend where the plaintiff failed to provide case law supporting his arguments or any legal theories with merit); *Boardley v. Household Fin. Corp. III*, 39 F.Supp.3d 689, 698 (D. Md. 2014) ("[T]he merits of

3

the litigation only are relevant to the Court's ruling on a motion for leave to amend if a proposed amendment may clearly be seen to be futile . . . .") (internal citation omitted).

Here, the Defendants filed their Motion for Judgment on the Pleadings (the "Motion for Judgment") on May 15, 2017. [Adv. Doc. No. 53]. The Motion for Judgment contained a bold-face paragraph on the first page setting forth that any response opposing the motion needed to be filed within 21 days. [*Id.*]. Thus, the Plaintiffs had until June 5, 2017 to file any responses to the Motion for Judgment. However, the Court entered the May 25 Order—eleven days before this twenty-one day period expired. [Adv. Doc. No. 55]. Thus, at first blush, by providing the Plaintiffs only ten days to respond to the Motion for Judgment with legal arguments, the Court could infer a manifest injustice.

The Plaintiffs ask this Court to vacate the May 25 Order and allow them to file a second amended complaint according to the new theories and defenses presented in the Plaintiffs' Response. [Adv. Doc. No. 60, p. 31 ¶ 77]. However, by examining the merits of each new argument under Rule 12(b)(6), the Court finds that all except one claim would be futile. Accordingly, the Court will deny the Motion in part and grant the Motion in part, and will allow the Plaintiffs to amend their First Amended Complaint to assert the one claim that is not futile: i.e., the claim under 12 C.F.R. § 1026.36(c)(1)(iii).

**B. The Breach of Contract Claim is Futile**

The Plaintiffs make two arguments regarding their breach of contract claim: (1) that the Defendants breached their implied duty to cooperate; and (2) a breach of contract claim is viable because the Plaintiffs either performed or were excused from performance.

1. <u>Implied Duty to Cooperate</u>

In their first argument, the Plaintiffs allege that the Defendants breached their duty to cooperate by failing to provide a useable payoff statement because such failure hindered, prevented, or interfered with the Plaintiffs' ability to perform under the mortgage note (the "<u>Note</u>") that HSBC serviced for property located at 21315 Ganton Drive, Katy, Texas 77450 (the "<u>Property</u>"). [*Id.* at p. 4 ¶¶ 8–9]. Further, they allege that they did not default under the Note because they lacked an accurate payoff statement and, therefore, did not know how much to pay. [*Id.* at p. 5 ¶ 11]. In support of their arguments, the Plaintiffs contend that 12 C.F.R. § 1026.36(c)(1)(iii) requires a servicer to provide an accurate payoff statement within a reasonable time.[3] [*Id.* at p. 6 ¶ 13]. The Plaintiffs do not cite any case law in support of this proposition. While neither of these arguments are set forth in the First Amended Complaint, the Plaintiffs assert that this is irrelevant because of the broad standards of Rule 8. [*Id.* at p. 6 ¶ 14].

In response, the Defendants argue that the breach of contract claim should still fail because the Plaintiffs fail to specify what provision of the contract the Defendants allegedly breached. [Adv. Doc. No. 63, p. 9 ¶ 31]. The Defendants appear to argue that the extra-contractual duty of cooperation is therefore not viable. [*Id.*].

The Plaintiffs cite to *Case Corp. v. HI-Class Bus. Sys. of Am., Inc.*, which states that "the focus of any implied covenant to cooperate is whether [the defendant] impeded [the plaintiff's] ability *to perform its contract obligations.*" 184 S.W.3d 760, 774 (Tex. App.—Dallas 2005, pet. denied) (emphasis in original); *see also Citizens Nat. Bank of Orlando v. Vitt*, 367 F.2d 541, 544–45 (5th Cir. 1966). Further, "Texas courts look beyond a written agreement to imply a covenant only if necessary to effectuate the intention of the parties as disclosed by the contract as

---

[3] The Plaintiffs cite 12 C.F.R. § 1026.36(c)(1)(iii) because this is the provision that was in effect in 2013. The Court discusses this provision subsequently herein. [*See infra* Part II.D].

a whole, but not to make the contract fair, wise, or just." *Balfour Beatty Fail, Inc., v. Kan. City S. Ry. Co.*, 173 F.Supp.3d 363, 400 (N.D. Tex. 2016) (internal citation omitted). "An implied covenant is necessary to effectuate the parties' intentions only if the obligation is so clearly within the contemplation of the parties that they deemed it unnecessary to express it." *Id.* (internal citations omitted).

One judge in the Southern District of Texas has held that "Texas law does not recognize an implied obligation to provide a payoff amount except in certain limited circumstances . . . ." *Nolasco v. CitiMortgage, Inc.*, No. H-12-1875, 2012 WL 3648414, at *6 (S.D. Tex. Aug. 23, 2012) (citing *Graves v. Logan*, 404 S.W.3d 582, 587 (Tex. App.—Houston [1st Dist.] 2010, no pet.)). In *Graves*, the debtor sought damages from the lender for its failure to provide a payoff statement by arguing that the lender violated the implied duty to cooperate. 404 S.W.3d at 584. The *Graves* court found that failure to provide a payoff statement did not interfere with the debtor's ability to perform under her promissory note, and at most, it interfered with the debtor's "pursuit of benefits incidental to the full execution of her obligations under the promissory note." *Id.* at 585. Stated differently, the lender's failure to provide the payoff statement did not interfere with the debtor's ability to perform under the note with the lender—it only interfered with the debtor's proposed sale of the property to a third party. Therefore, the Court concluded that the implied duty to cooperate was inapplicable. *Id.*

Here, the situation is identical to *Graves*. The Plaintiffs allege that the Defendants interfered with their ability to perform under the contract (i.e., the Note) because the Defendants' failure to provide an accurate payoff statement prevented the Plaintiffs' sale of the Property from being consummated, which in turn prevented the Plaintiffs from obtaining the sale proceeds to pay the Note in full. [Adv. Doc. No. 60, p. 8 ¶ 18]. However, by failing to provide an accurate

6

payoff statement, the Defendants did not interfere with the Plaintiffs' ability to perform under the Note (i.e., their ability to continue to make monthly payments). Like the *Graves* defendant, any interference—if it existed—would have been regarding the proposed contract the Plaintiffs had with the buyer of the Property, not with the Note. These circumstances are insufficient to constitute any breach by the Defendants of an implied duty to cooperate with the Plaintiffs.

Therefore, for these reason, the Plaintiffs' duty to cooperate argument is futile.

2. Implied Performance or Excused from Performance

Second, the Plaintiffs argue that they can also sue under the actual contract (i.e., the Note) because they sufficiently performed thereunder by: (1) implying performance in full under the Note based on the pending sale of the Property, of which the Defendants were aware, [*id.* at p. 7 ¶ 15–16]; or (2) being excused from performance under the Note insofar as they could not consummate the sale of the Property due to the Defendants' failure to provide a payoff statement (which prevented the closing on the sale of the Property, as the title company would not close this transaction without an accurate payoff statement), [*id.* at p. 8 ¶ 17]. The Plaintiffs argue that the Defendants violated paragraph five of the Note—"Borrower's Right to Prepay"—because the Defendants failed to provide a payoff statement. [*Id.* at p. 8 ¶ 18]. In response, the Defendants argue that the Plaintiffs have failed to show that they performed under the Note. [Adv. Doc. No. 63, p. 9 ¶ 32].

The Plaintiffs cite *Carr v. Norstok Bldg. Sys., Inc.*, which sets forth three avenues for recovery of damages:

> [A] party to a contract cannot enforce it or recover damages for its breach unless [1] that party shows that he or she or it has performed the obligations imposed on him or [2] that he or she has offered to perform them and was able to do so or [3] unless the party shows some valid excuse for failure to perform.

7

767 S.W.2d 936, 939 (Tex. App.—Beaumont 1989, no writ.).

The Plaintiffs allege that they can enforce the Note despite having defaulted thereunder because they *impliedly* offered to pay off the Note in full as permitted by paragraph five of the Note. [Adv. Doc. No. 60, p. 7 ¶ 16]. This is the second avenue under *Carr*. The Plaintiffs allege that when they requested their payoff statement, they intended to make this full payment with the proceeds of the pending sale of the Property. [*Id.*]. The Plaintiffs, however, admit that they never submitted a formal offer to the Defendants to pay the Note in full. [*Id.*].

The Plaintiffs also contend that the Defendants' failure to cooperate by providing them with an accurate payoff statement excused their performance entirely. [*Id.* at p. 8 ¶ 17]. This is the third avenue under *Carr*. In the alternative, the Plaintiffs allege that the Defendants breached the contract by violating the law—namely, 12 C.F.R. § 1026.36(c)(1)(iii). [*See infra* Part II.D]. The Court addresses each option and the alternative argument in turn and finds they are all futile pursuits.

First, the Plaintiffs have not shown that they actually performed the obligations imposed by the Note; therefore, they are unable to recover damages under the first avenue set forth in *Carr*.

Pursuant to the second approach, the Plaintiffs allege that they did not make a formal offer to the Defendants to pay the Note in full; instead, they argue that they made an implied offer by requesting payoff statements and "conveying to the Defendants that they had a pending sale of the Property." [*Id.* at p. 7 ¶ 16]. However, pursuant to the Note, in order to make a "prepayment" (which includes a payment in full), the Plaintiffs must inform the noteholder (i.e., Household) *in writing* that they intend to make a prepayment. [Adv. Doc. No. 52-1, p. 12 of 27

8

(emphasis added)]. There is no evidence—or even an argument—that the Plaintiffs gave any written notice to Household.

The Fifth Circuit has held that "[i]t is unreasonable as a matter of law to rely on oral representations that are contradicted by written agreements between the parties" and that "[i]f a contract must be in writing, [then] any subsequent modification of that contract must also be in writing." *Hall v. Branch Breaking*, No. H-13-328, 2014 WL 12539728, at *2, *4 (S.D. Texas April 30, 2014) (internal citation omitted). In *Chungag v. Wells Fargo Bank, N.A.*, the plaintiffs made multiple excess payments on their note, but failed to provide written notice that the payments were prepayments. 489 Fed. App'x. 820, 821 (6th Cir. 2012). The court held that because there was no written contractual change or notice from the plaintiffs, the excess payments were considered to be "advance payments" rather than "prepayments of principal." *Id.* at 824. Thus, in the bank's view, the plaintiffs failed to make their monthly mortgage payments by the due date, and the bank subsequently foreclosed on their house. *Id.* Here, the Plaintiffs did not provide formal written notice of their intent to pay in full; and therefore, pursuant to express terms of their contract (i.e., the Note), they are not permitted to make an implied offer to prepay.

Pursuant to the third approach, the Plaintiffs argue that they were excused from performing under the Note because the Defendants, by failing to provide an accurate payoff statement, wrongfully prevented the Plaintiffs from performing under their contract to sell the Property and thereby generate sufficient proceeds to pay off the Note. [Adv. Doc. No. 60, p. 8 ¶¶ 17–18]. The Defendants have not responded to this argument, but this Court is nevertheless unpersuaded. The Supreme Court of Texas has held that "[i]t is a fundamental principle of contract law that when one party to a contract commits a *material breach* of that contract, the other party is discharged or excused from further performance." *Mustang Pipeline Co. v. Driver*

9

*Pipeline Co.*, 134 S.W.3d 195, 196 (Tex. 2004) (emphasis added). In *Mustang*, the court found that failing to perform pursuant to the implied "time is of the essence" obligation constituted a material breach. *Id.*

Here, the Plaintiffs allege that the Defendants breached the contract (i.e., the Note) by failing to provide them a payoff statement, which in turn prevented the Plaintiffs from paying the Note in full (by using the proceeds from the contemplated sale of the Property), as permitted by paragraph five. [Adv. Doc. No. 60, p. 8 ¶ 18]. However, there is no provision in the Note that requires the Defendants to provide a payoff statement; thus, any duty that the Defendants could have breached would have to be implied. *Mustang*, 134 S.W.3d at 196 (finding a material breach pursuant to the implied obligation of timely performance). The only implied duty pled by the Plaintiffs is the implied duty to cooperate.

The Court has already determined that the implied duty to cooperate is not applicable because the Defendants' actions did not impede the Plaintiffs' ability to perform under the Note. Therefore, the Court will not consider this implied duty to provide a payoff statement in analyzing whether the Defendants committed a "material breach" of the Note. Additionally, "there is no special relationship between a mortgagor and a mortgagee, or between a servicer and a borrower, that would imply an independent common law duty . . . ." *Miller v. CitiMortgage, Inc.*, 970 F. Supp. 2d 568, 585 (N.D. Tex. 2013); *see also Central Sav. and Loan Ass'n v. Stemmons Nw. Bank, N.A.*, 848 S.W.2d 233, 240 (Tex. App.—Dallas 1992, no pet.). Because there was no express contractual duty to provide a payoff statement, because the Defendants did not violate any implied duty to cooperate, and because no other implied duties are available, the Defendants could not have committed a material breach that would excuse the Plaintiffs from performance under the Note.

Alternatively, the Plaintiffs argue that the Defendants materially breached the Note by violating 12 C.F.R. § 1026.36(c)(1)(iii), by failing to provide a payoff statement. [Adv. Doc. No. 60, pp. 5–6 ¶¶ 11–13]. In *Berger v. Home Depot, U.S.A., Inc.*, the court found that an alleged violation of a statute is not grounds to also assert breach of contract because it "would create two claims for relief." 476 F.Supp.2d 1174, 1177 (C.D. Cal. 2007). Thus, this claim is not viable.

For the reasons set forth above, the Plaintiffs' breach of contract claims are futile, and therefore the Court will not address the Plaintiffs' arguments for damages.

## C. The Negligence and Negligent Misrepresentation Claims are Futile

The Court adheres to its prior ruling that the Plaintiffs' claims for negligence and negligent misrepresentation are time barred. [Adv. Doc. No. 55, pp. 6–10 of 22]. The Court recognizes that its citation in the May 25 Order to *In re Gaskins*, 98 B.R. 328, 330 (Bankr. E.D. Tenn. 1989), is misplaced and retracts this citation from this order. [Adv. Doc. No. 55, p. 5 n.2]. However, the Court reiterates its holding that 11 U.S.C. § 108(a) is not applicable for Chapter 13 debtors. *Gaskins* notwithstanding, there is ample case law that this Court cited in its May 25 Order holding that Chapter 13 debtors may not avail themselves of 11 U.S.C. § 108(a). *See, e.g.*, *Carr*, 482 F.Supp.2d at 850; *In re Ranasinghe*, 341 B.R. 556, 567 (Bankr. E.D. Va. 2006); *In re Bowen*, No. 03-1007, 2004 Bankr. LEXIS 356, at *25 (Bankr. N.D. Tex. Mar. 29, 2004) ("There is no statutory authority allowing a Chapter 13 debtor to utilize this tolling provision."). Indeed, there is at least one other case that this Court did not cite in the May 25 Order that also holds that a Chapter 13 debtor may not invoke the tolling provision of 11 U.S.C. § 108(a). *See In re Johnson*, Adv. No. 08-4068, 2009 Bankr. LEXIS 2260, at *6–9 (Bankr. S.D. Ill. July 29, 2009 (holding as improper to allow a chapter 13 debtor additional time "merely because she filed

bankruptcy").[4] The Court finds persuasive the arguments set forth in these opinions that a Chapter 13 debtor may not invoke the tolling provision of 11 U.S.C. § 108(a).

The Court also adheres to its ruling that the negligence claim is barred because there is no special relationship, and thus no legal duty owed by a mortgage servicer (i.e., HSBC) to a mortgagee (i.e., the Plaintiffs). [Adv. Doc. No. 55, p. 7 of 22]. Thus, these claims remain futile.

### D. The Claim for Violation of the Truth in Lending Act Claim is Not Futile

In the May 25 Order, the Court dismissed the claims under the Truth in Lending Act ("TILA") because mortgage servicers cannot be held liable under TILA and because 15 U.S.C. § 1639g did not exist at the time of the alleged wrong and therefore was not a viable cause of action. [*Id.* at pp. 14–16 of 22]. Now, the Plaintiffs argue that they "mistakenly cited 15 U.S.C. § 1639g" and intended to cite 12 C.F.R. § 1026.36(c)(3).[5] [Adv. Doc. No. 60, p. 26 ¶ 63]. "12 C.F.R. § 1026.36(c) is part of Regulation Z, which is the regulation that implements TILA." *Boardley*, 39 F. Supp. 3d at 704 (internal quotations and citations omitted). In response, the Defendants argue that 12 C.F.R. § 1026.36(c)(1)(iii) has the same effective date as TILA and therefore bars the Plaintiffs' claims. [Adv. Doc. No. 63, pp. 13–14 ¶ 42].

The Court agrees with the Plaintiffs insofar as "a failure to cite the correct statute in a complaint does not affect the merits of the claim." [Adv. Doc. No. 60, p. 26 ¶ 63]; *see In re Enron Corp.*, 323 B.R. 857, 862 (Bankr. S.D.N.Y. 2005). However, the Court disagrees with the Defendants—it is clear that a prior version of 12 C.F.R. § 1026.36 existed and governed such situations in June 2013. *See* 12 C.F.R. § 1026.36(c)(1)(iii) (2013); *see also* High-Cost Mortg.

---

[4] *But see In re Bryant*, 548 B.R. 239, 243 (Bankr. E.D. Tenn. 2016) (listing cases that allow a chapter 13 debtor to utilize 11 U.S.C. § 108).

[5] The Plaintiffs here erroneously cited 12 C.F.R. § 1026.36(c)(3) (2013), which states "For purposes of this paragraph (c), the terms "servicer" and "servicing" have the same meanings as provided in 12 C.F.R. § 1024.2(b), as amended." However, the appropriate way to cite this regulation is 12 C.F.R. § 1026.36(c)(1)(iii). The Court notes that the Plaintiffs do properly cite the statute later in the Plaintiffs' Response. [Adv. Doc. No. 60, pp. 26–27 ¶ 64].

and Homeownership Counseling Amendments to the Truth in Lending Act (Regulation Z) and Homeownership Counseling Amendments to the Real Estate Settlement Procedures Act (Regulation X), 78 F.R. 6856-01, 6936 n.174 (proposed Jan. 31 2013) (to be codified at 12 C.F.R. 1024–1026) (referring to the 2013 version of 12 C.F.R. § 1026.36(c)(1)(iii) as the "current" version of the statute). The 2013 version states that:

> In connection with a consumer credit transaction secured by a consumer's principal dwelling, no servicer shall:
>
> [. . .]
>
> Fail to provide, within a reasonable time after receiving a request from the consumer or any person acting on behalf of the consumer, an accurate statement of the total outstanding balance that would be required to satisfy the consumer's obligation in full as of a specified date.

12 C.F.R. § 1026.36(c)(1)(iii) (2013). The Court does not use the current version of the statute because it was not in effect at the time of the Plaintiffs' alleged harm. High-Cost Mortg., 78 F.R. at 6856 (stating that the effective date for the modifications is January 10, 2014).

"The [Consumer Financial Protection Bureau] has explained that 'payoff statements should be issued according to the best information available at the time.'" *Jamison v. Bank of Am., N.A.*, 194 F.Supp.3d 1022, 1029 (E.D. Cal. 2016) (quoting 78 Fed. Reg. 10902, 10958 (Feb. 14, 2013)). 12 C.F.R. § 1026.36(c)(1)(iii) "essentially requires servicers [of home mortgage loans] to tell borrowers the account balance, or payoff amount, when asked." *Aghazu v. Severn Savings Bank*, No. PJM 15-1529, 2016 WL 808823, at *5 (D. Md. Mar. 2, 2016) (internal citation omitted). A payoff statement must be accurate but it is permissible "[t]hat some of [the] fees included in the payoff statement are later disputed" for purposes of accuracy under TILA. *Sotomayor v. Deutsche Bank Nat'l Trust Co.*, No. 0:15-cv-61972-WPD, 2016 WL 3163074, at *3 (S.D. Fla. Feb. 5, 2016); *see also Norris v. Bayview Loan Serv., LLC*, No. CV-15-06413-

MWF, 2015 WL 6745048, at *9 (C.D. Cal. Oct. 26, 2015) (finding that to survive a motion to dismiss, the inaccuracy of the payoff statement must be explained).

Here, the regulation applies to the Defendants because they are "servicers," i.e., the "person[s] responsible for servicing of a mortgage loan." 12 C.F.R. § 1024.2(b)(26) (2013). Thus, they had a duty to provide an accurate payoff statement to the Plaintiffs within "a reasonable time." The Plaintiffs dispute the accuracy of the payoff statements because the Defendants sent them five different payoff statements; thus, the Plaintiffs contend that at least four had to be inaccurate. [Adv. Doc. No. 38, pp. 11–12 ¶ 62]; [Adv. Doc. No. 60, pp. 13–14 ¶ 30]. This explanation of the inaccuracy is sufficiently compelling that this Court finds that the Plaintiffs' claim could survive a motion to dismiss. Thus, this claim is not futile, and the Plaintiffs may amend their First Amended Complaint to assert this cause of action against the Defendants.

### E. Claims Under the Texas Debt Collection Act are Futile

In the May 25 Order, the Court found that the Plaintiffs could not maintain an action under the Texas Debt Collection Act (the "TDCA") because their mortgage was in default. [Adv. Doc. No. 55, p. 17 of 22]. The Plaintiffs no longer dispute this fact. Thus, the TDCA claim still fails.

However, the Plaintiffs now argue that by providing five different payoff statements, the Defendants "misrepresented the character, extent, or amount" of the debt owed to Household under Texas Finance Code § 392.304(a)(19). [Adv. Doc. No. 60, p. 28 ¶ 67]. They further allege that this failure "constituted an 'other false representation or deceptive means' within the meaning of Tex. Fin. Code [§] 392.304(a)(19)." [*Id.*].

In response, the Defendants argue that the Plaintiffs failed: (1) to allege that the mortgage was not in default and thus cannot plead the TDCA as a cause of action; and (2) to identify a section of the TDCA that the Defendants breached. [Adv. Doc. No. 63, pp. 14–15 ¶¶ 43–46]. While the Court disagrees with the Defendants that the Plaintiffs failed to identify various sections of the TDCA, the Court does agree with the Defendants' first argument, and, accordingly, the Court adheres to its prior ruling that a claim under the TDCA is unavailable when the mortgage is in default. [Adv. Doc. No. 55, p. 17 of 22]. For this reason, the Plaintiffs' TDCA claims are futile.

**F. The Interference with an Existing Contract Claim is Futile**

The Court adheres to its ruling that this cause of action is barred by the applicable statute of limitations and that 11 U.S.C. § 108 is inapplicable in the dispute at bar. [*Id.* at pp. 11–12 of 22]. Further, the Plaintiffs do not allege any facts indicating that the Defendants' acts were intentional or that their damages were proximately caused by the Defendants' failure to provide a payoff statement. Thus, this claim remains futile.

### III. CONCLUSION

In sum, the Plaintiffs have shown that their claim under 12 C.F.R. § 1026.36(c)(1)(iii) passes muster and is therefore not futile. However, this is the only claim that is not futile; all others are futile. Therefore, the Court will grant the Motion in part and deny it in part. It is therefore:

**ORDERED** that the Motion is granted in part, and therefore the May 25 Order is vacated in part only to allow the Plaintiffs leave to amend their First Amended Complaint to assert the one claim under 12 C.F.R. § 1026.36(c)(1)(iii); and it is further

**ORDERED** that the Motion is denied in part—leaving the remainder of the May 25 Order intact—and therefore the Plaintiffs are not permitted to amend their First Amended Complaint to assert those claims that the May 25 Order dismissed with prejudice; and it is further

**ORDERED** that the Plaintiffs have fourteen days from the date set forth below to file their second amended complaint asserting their new claim under 12 C.F.R. § 1026.36(c)(1)(iii).

Signed on this 30th day of June, 2017.

_____
Jeff Bohm
United States Bankruptcy Judge

```
                        United States Bankruptcy Court
                          Southern District of Texas
Southall-Shaw,
         Plaintiff                                       Adv. Proc. No. 15-03322-jb

HSBC Mortgage Services, Inc.,,
         Defendant
```

# CERTIFICATE OF NOTICE

```
District/off: 0541-4         User: ltie             Page 1 of 1          Date Rcvd: Jun 30, 2017
                             Form ID: pdf001        Total Noticed: 1
```

Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on
Jul 02, 2017.
pla            +Maria Southall-Shaw,   2610 Katie Harbor,   Manvel, TX 77578-4838

Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.
NONE.                                                                                          TOTAL: 0

```
               ***** BYPASSED RECIPIENTS (undeliverable, * duplicate) *****
pla              Elvis Lee Shaw
dft              HSBC Mortgage Services, Inc.,
dft              Household Finance Corporation III
                                                                                TOTALS: 3, * 0, ## 0
```

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.

Transmission times for electronic delivery are Eastern Time zone.


**I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Jul 02, 2017                               Signature:  /s/Joseph Speetjens

---

# CM/ECF NOTICE OF ELECTRONIC FILING

The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email)
system on June 30, 2017 at the address(es) listed below:
              Joseph Patrick Griffith    on behalf of Defendant    HSBC Mortgage Services, Inc.,
               griffithj@gtlaw.com,    jimisons@gtlaw.com
              Joseph Patrick Griffith    on behalf of Defendant    Household Finance Corporation III
               griffithj@gtlaw.com,    jimisons@gtlaw.com
              Melissa S Hayward    on behalf of Defendant    Caliber Home Loans, Inc. MHayward@HaywardFirm.com,
               Mholmes@HaywardFirm.com
              Reese W Baker    on behalf of Plaintiff Maria   Southall-Shaw courtdocs@bakerassociates.net,
               i.go@bakerassociates.net;igotnotices@gmail.com;courtdocsrbaker@gmail.com;courtdocsstaylor@gmail.c
               om;reese.baker@bakerassociates.net;bakernotices@gmail.com;baker5151calendar@gmail.com;staff@baker
               associates.net;igo&#0
              Reese W Baker    on behalf of Plaintiff Elvis Lee Shaw courtdocs@bakerassociates.net,
               i.go@bakerassociates.net;igotnotices@gmail.com;courtdocsrbaker@gmail.com;courtdocsstaylor@gmail.c
               om;reese.baker@bakerassociates.net;bakernotices@gmail.com;baker5151calendar@gmail.com;staff@baker
               associates.net;igo&#0
              Shari L Heyen    on behalf of Defendant    Household Finance Corporation III heyens@gtlaw.com,
               jamrokg@gtlaw.com
              Shari L Heyen    on behalf of Defendant    HSBC Mortgage Services, Inc., heyens@gtlaw.com,
               jamrokg@gtlaw.com
                                                                                             TOTAL: 7